ELBA MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6995.    Promulgated February 7, 1927.

The Commissioner's determination of the petitioner's invested capital for the taxable years was erroneous for the reason that he incorrectly computed its depreciation reserve.

*E. S. Parker, Esq.*, and *J. L. Elliott, C. P. A.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

The Commissioner determined deficiencies of $11,008.44 and $2,741.17 for the fiscal years ending August 31, 1919 and 1920, respectively. The petitioner questions the correctness of only $9,138 in the total tax of $13,749.61. Petitioner claims that the Commissioner erred in reducing invested capital on account of his determination of the alleged depreciation of plant and equipment sustained from 1904 to August 31, 1918. The position of the petitioner is that its correct depreciation reserve for this period was $88,528.47.

FINDINGS OF FACT.

Petitioner is a North Carolina corporation engaged in the manufacture of cotton-seed oil at Charlotte. At the date of organization in April, 1904, petitioner had a paid-in capital of $68,600 and that amount of stock outstanding. It carried on active manufacturing operations during only eight months of each of its fiscal years. Its business was seasonal and depended entirely upon the harvesting of the cotton crop. During the four-month period of inactivity in each year petitioner made numerous repairs, replacements, and additions to its plant and equipment so as to be ready for the ensuing year's operations. From the date of incorporation until dissolution in 1925 petitioner kept its plant in a very high state of efficiency. Each year the machinery and equipment were carefully inspected and overhauled, and repaired or replaced so that the ensuing eight-month period of operations could be carried on with-

out interruption or inefficient operation of the equipment. Frequently certain of the stockholders and some of the officers complained that too much money was being expended annually for repairs and replacements, but the president of the corporation would not consider any change in his policy of starting the period of operation with all machinery and equipment in perfect condition.

Little consideration was given to the matter of formal bookkeeping. The stock of the corporation was held by a small group of persons who were familiar and in close touch with the affairs and the business of the corporation. Prior to the fiscal year ending August 31, 1919, the corporation never charged any depreciation upon its books of account, nor did it carry upon its books a strictly depreciation reserve account. From the date of incorporation to 1919 the petitioner carried upon its books an account styled " Reserve for Depreciation," which was a general balance account into which the difference between the assets and liabilities at the end of the year was carried. The company carried no profit and loss or surplus accounts as such upon its books. The account styled " Depreciation Reserve " represented profit and loss, surplus, and reserve for depreciation combined. The net earnings for the year were added to this account, losses sustained were charged against it, and stock and cash dividends were paid out of it. The amount shown in the " Reserve for Depreciation " account in any year was never regarded by the corporation or the banks from which it borrowed considerable sums of money from time to time as strictly a depreciation reserve. Prior to the excess-profits tax the corporation never considered it necessary to maintain upon its books separately profit and loss, surplus, or reserve for depreciation accounts. In 1919, when the petitioner's attention was called to the fact that these accounts should be kept separately, it had its books rewritten so as to reflect correctly the true situation. The profits and losses for the fiscal years ending August 31, 1905, to and including August 31, 1918, after taking into consideration all items of expense but with no reduction for exhaustion, wear and tear, were as follows:

| Fiscal year ending August 31. | Profit. | Loss. |
|---|---|---|
| 1905 | | $6, 022. 00 |
| 1906 | $24, 812. 76 | |
| 1907 | 37, 323. 41 | |
| 1908 | 19, 537. 33 | |
| 1909 | 48, 860. 36 | |
| 1910 | 37, 158. 00 | |
| 1911 | | 15, 365. 20 |
| 1912 | 120, 404. 13 | |
| 1913 | 79, 212. 00 | |
| 1914 | 29, 447. 01 | |
| 1915 | 38, 886. 42 | |
| 1916 | | 38, 099. 92 |
| 1917 | | 1, 139. 61 |
| 1918 | 41, 686. 47 | |

The " Reserve for Depreciation " account carried upon petitioner's books was increased or decreased according to the profits or losses as reflected by the difference in its assets and liabilities as disclosed by its balance sheet at the end of each fiscal year. At the beginning of the fiscal year 1910 this " Reserve for Depreciation " account showed a balance of $72,000, and at the end of that year it showed a balance of $106,330. During the fiscal year 1910 a 155 per cent stock dividend was declared and paid, which wiped out the amount shown in the " Depreciation Reserve " account. At the same time $65,100 par value of the common stock and an undisclosed number of shares of preferred stock, were sold for cash at par, which made the common stock of the corporation at the beginning of the fiscal year 1911, $240,000, par value.

At the beginning of the fiscal year 1911 there was no balance in the " Reserve for Depreciation " account, but during the subsequent years additional amounts were carried into the account so that at the beginning of the fiscal year on September 1, 1917, the account showed a balance of $138,234.22. Out of this amount dividends amounting to $115,680.65 were paid, leaving only $23,553.57 in the " Reserve for Depreciation " account.

In 1923 the Commissioner's field agent made an investigation of the petitioner's books of account and, upon finding that it had kept its books as above indicated, he went back for the purpose of determining the reserve for depreciation, in the computation of invested capital, to the fiscal year beginning September 1, 1910, and started with the balance of $72,000 shown in the " Reserve for Depreciation " account, which included profit and loss, surplus and depreciation, as a total reserve for depreciation, and then proceeded to build up a depreciation reserve for years subsequent to 1910 at rates which the petitioner does not dispute. The agent gave no consideration to depreciation for years prior to 1910 or to the cost of any additions and replacements. By this method the agent computed a depreciation reserve of $138,234.42 at August 31, 1917, and of $156,835.61 at August 31, 1918. As a result of this determination he held that dividends of $115,680.65 for years prior to the taxable years here in question were paid out of capital and reduced invested capital accordingly. The depreciation reserve computed to 1910 upon petitioner's plant and equipment without regard to additions and replacements, at the rates used by the Commissioner, would have been $32,802.54 instead of $72,000 as used by the agent. Petitioner did not consider the revenue agent's determination of depreciation reserve to be fair and just, so it took its books and records from the beginning of its operations in 1904, determined the cost

of additions and replacements, and extraordinary repairs which could not properly be charged to expense, used the rates adopted by the revenue agent, and computed its depreciation reserve over the period from 1905 to 1918, against which it ·charged in each year the cost of additions and replacements amounting to $78,703.40, arriving at a total depreciation reserve at August 31, 1918, of $88,528.47. The Commissioner approved the revenue agent's computation in his determination upon which this proceeding is predicated. The depreciation reserve as computed by the revenue agent and as determined by the petitioner follows:

| Date. August 31. | Plant. | Revenue agent's depreciation reserve. | Taxpayer's depreciation reserve. | Percentage | |
|---|---|---|---|---|---|
| | | | | Revenue agent. | Taxpayer. |
| 1905 | $78,836.22 | | $2,194.73 | | 2.78 |
| 1906 | 104,279.04 | | 5,882.94 | | 5.64 |
| 1907 | 117,030.76 | | 8,548.71 | | 7.30 |
| 1908 | 125,025.45 | | 11,584.54 | | 9.27 |
| 1909 | 130,448.34 | $72,000.00 | 11,090.64 | 55.19 | |
| 1910 | 301,799.22 | 72,000.00 | 19,561.05 | 23.85 | 6.48 |
| 1911 | 304,538.50 | 72,000.00 | 30,925.54 | 23.65 | 10.15 |
| 1912 | 302,344.11 | 112,000.00 | 36,251.72 | 37.04 | 11.99 |
| 1913 | 300,214.08 | 128,960.00 | 42,579.17 | 42.95 | 14.18 |
| 1914 | 302,011.80 | 128,960.00 | 50,467.20 | 42.70 | 16.71 |
| 1915 | 308,350.23 | 138,234.42 | 59,335.60 | 44.83 | 19.24 |
| 1916 | 327,907.00 | 138,234.42 | 68,318.05 | 42.15 | 20.52 |
| 1917 | 337,402.16 | 138,234.42 | 68,180.66 | 40.97 | 20.20 |
| 1918 | 341,353.70 | 156,835.61 | 88,528.47 | 45.94 | 25.93 |

By reason of the annual repairs and replacements made by petitioner, the total depreciation sustained by its plant to 1918 was not in excess of 25 per cent.

OPINION.

LITTLETON: We are of the opinion that the position of the petitioner in this proceeding is correct and that it is entitled to have its invested capital for the fiscal years 1919 and 1920 recomputed upon the basis of a depreciation reserve of $88,528.47 at August 31, 1918. The Board's decisions in the *Appeals of Rub-No-More Co.*, 1 B. T. A. 228; *Cleveland Home Brewing Co.*, 1 B. T. A. 87; *Russell Milling Co.*, 1 B. T. A. 194, and other decisions of the Board holding that, under certain circumstances, the depreciation charged by the petitioner upon its books in prior years should not be disturbed, have no application to the question here presented, for the reason that the petitioner wrote off no depreciation in the prior years nor did it undertake to set up an accurate depreciation reserve. Unfortunately, it designated its profit and loss, surplus and depreciation account as a "Reserve for Depreciation," and, as the Commissioner in article 844 of his Regulations 45 has said, "If any reserves for depreciation or for depletion are included in the surplus account it should be

analyzed so as to separate such reserves and leave only real surplus." Petitioner's books were admittedly inaccurately kept and did not truly reflect surplus or sustained depreciation. The revenue agent and the Commissioner admitted this fact, but they take the position that the petitioner did not convince them that the depreciation reserve of $156,835.61 determined by the revenue agent was not correct. The evidence submitted by petitioner convinces us of this fact. The petitioner has used a fair and reasonable method to determine depreciation reserve. It has used the rates adopted by the Commissioner, and we are convinced from the evidence that petitioner's determination of the additions and replacements made over the period of years was sufficiently accurate to be entirely fair to itself and to the Government, and we approve it. On the other hand, the determination of the revenue agent, which was approved by the Commissioner, was purely arbitrary throughout and resulted in an erroneous determination of the petitioner's invested capital for the taxable years. The revenue agent might just as well have started with the "Reserve for Depreciation" shown on the books at the end of the fiscal year 1910, which was zero, instead of the $72,000 shown in that account at the beginning of that year; or he might have taken the balance shown in that account at any other date, which would have produced a different result from that arrived at by him.

> *Judgment will be entered for the petitioner upon the issues raised on 15 days' notice, under Rule 50.*